IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**VIRGINIA ROSEANN CUNY,**

      **Plaintiff,**

v.                                                         Case No.: 3:15-cv-14019

**CAROLYN W. COLVIN,**
**Acting Commissioner of the**
**Social Security Administration,**

      **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

      This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently before the court are the parties' cross motions for judgment on the pleadings as articulated in their briefs. (ECF Nos. 9, 10).

      Having fully considered the record and the arguments of the parties, the undersigned United States Magistrate Judge respectfully **RECOMMENDS** that the presiding District Judge **DENY** Plaintiff's request for judgment on the pleadings, (ECF No. 9); **GRANT** Defendant's request to affirm the decision of the Commissioner, (ECF

1

No. 10); and **DISMISS** this action from the docket of the Court.

I. <u>**Procedural History**</u>

On June 12, 2013, Plaintiff, Virginia Roseann Cuny ("Claimant"), completed an application for DIB, alleging a disability onset date of October 9, 2012, due to a total left hip replacement and protruding discs in her back. (Tr. at 172-79, 228). Her application was denied initially and upon reconsideration. (Tr. at 11, 87-96). Claimant requested and received a hearing before the Honorable John M. Dowling, Administrative Law Judge ("ALJ"), who determined on May 11, 2015 that Claimant was not disabled under the Social Security Act. (Tr. at 11-25). The ALJ's decision became the final decision of the Commissioner on August 12, 2015 when the Appeals Council denied Claimant's request for review. (Tr. at 1-5). Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner filed an Answer and a Transcript of the Administrative Proceedings. (ECF Nos. 7, 8). Claimant filed a Brief in Support of Judgment on the Pleadings, and Defendant filed a Brief in Support of Defendant's Decision. (ECF Nos. 9, 10). The time period for Claimant to file a reply to the Commissioner's brief has expired. Consequently, the matter is fully briefed and ready for resolution.

II. <u>**Claimant's Background**</u>

Claimant was 57 years old on the date of her alleged onset of disability and 60 years old on the date of the ALJ's decision. (Tr. at 23). Claimant completed four or more years of college and communicates in English. (Tr. at 227, 229). Prior to her alleged onset of disability, Claimant worked for over 18 years as a Registered Nurse ("RN") in the Neonatal Intensive Care Unit ("NICU") of a local hospital. (Tr. at 32-33, 229). Claimant's primary functional deficits arise from a right knee disorder, right hip arthritis, a bad back, and

2

post left hip replacement surgery.

### III. Summary of ALJ's Decision

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary and benefits are denied. 20 C.F.R. § 404.1520. The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 404.1520(c). If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* § 404.1520(d). If the impairment does, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 404.1520(e). After making this determination, the next step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability,

and the burden shifts to the Commissioner to demonstrate, as the final step in the process, that the claimant is able to perform other forms of substantial gainful activity, when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 404.1520(g); *see also McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger,* 538 F.2d. 572, 574 (4th Cir. 1976).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for disability insurance benefits through December 31, 2018. (Tr. at 13, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since October 9, 2012, the alleged disability onset date. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: "right knee disorder, status post lumbar discectomy, right hip arthritis, and left hip replacement." (Tr. at 13-16, Finding No. 3).

Under the third inquiry, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 17, Finding No. 4). Accordingly, the ALJ determined Claimant's RFC, concluding that she had:

> [T]he residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can occasionally climb ramps or stairs, never climb, [sic] ladders, ropes, or scaffolds. She can occasionally balance or stoop. She can never kneel. She can occasionally crouch, but never crawl. She must avoid concentrated exposure to extreme cold, extreme heat, excessive vibration, and irritants such as fumes, odors, dusts, gasses, and poorly ventilated areas. The claimant must avoid all exposure to

>unprotected heights and hazardous machinery. The claimant requires a sit stand option where the claimant can alternate between sitting and standing position at will provided that she remains productive.

(Tr. at 17-23, Finding No. 5). At the fourth inquiry, the ALJ found that Claimant was unable to perform any past relevant work. (Tr. at 23, Finding No. 6). Therefore, under the fifth and final inquiry, the ALJ reviewed Claimant's past work experience, age, and education in combination with her RFC to determine her ability to engage in substantial gainful activity. (Tr. at 23-25, Finding Nos. 7-10). The ALJ considered that (1) Claimant was defined as an individual closely approaching retirement age on the alleged disability onset date; (2) she had at least a high school education and could communicate in English; and (3) Claimant had acquired work skills from her past relevant work. (Tr. at 23, Finding Nos. 7-9). Given these factors, Claimant's RFC, and the testimony of a vocational expert, the ALJ determined that Claimant had acquired work skills from past relevant work that were transferable to other occupations, with jobs existing in significant numbers in the national economy. (Tr. at 23-24, Finding No. 10). Specifically, the ALJ adopted the vocational expert's testimony that Claimant could still work at the sedentary exertional level as a telephone triage nurse and in some types of case management nursing. (*Id.*). Further, the ALJ accepted the vocational expert's testimony that Claimant's previous work was so similar to the above positions that Claimant would not require any additional skills and would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or industry. (*Id.*). Therefore, the ALJ found that Claimant was not disabled as defined in the Social Security Act through the date of the decision. (Tr. at 24, Finding No. 11).

IV. **Claimant's Challenge to the Commissioner's Decision**

In her sole challenge to the Commissioner's decision, Claimant's cites 20 C.F.R.

Pt. 404, Subpt. P, App. 2, § 201.00(f) and Social Security Ruling ("SSR") 82-41, which provide that in order to find that an individual of advanced age (over 55) has skills which are transferable to sedentary level work, "there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." (ECF No. 9 at 7). Claimant argues that the vocational expert in this matter was "somewhat tentative" in her answers regarding the level of vocational adjustment that would be required if the proposed sedentary nursing positions involved the use of different computer software and telephone systems than those used by Claimant in her prior position. (*Id.* at 6-7). Claimant alleges that the vocational expert agreed that there would be differences in the sedentary positions that might be difficult for Claimant "to adjust to"; therefore, the ALJ's determination that Claimant's skills were transferable to the proposed sedentary nursing jobs was not supported by substantial evidence. (*Id.* at 8-9).

In response, the Commissioner disagrees with Claimant's view of the vocational expert's testimony, and its impact on the disability determination. The Commissioner contends that the testimony relied upon by Claimant was in reply to factually flawed and unsupported questions; accordingly, the testimony had no impact on the disability determination. In support, the Commissioner points to statements made by the ALJ at the time of the questioning, which disputed the validity of the underlying premise of counsel's inquiries. When Claimant's attorney questioned the vocational expert about new computer systems, software, and telephone systems, the ALJ interjected that Claimant's counsel was making assumptions in the questions that were not supported by the evidence of record. (ECF No. 10 at 5). In addition, the Commissioner argues that Claimant's challenge overlooks key testimony by the vocational expert. Specifically, the vocational expert testified that at least one of the proposed positions, the triage nurse,

6

required precisely the same skills held by Claimant regardless of software or computer system changes. (*Id.* at 5-6). Consequently, the final decision was supported by substantial evidence.

## V. Scope of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In *Blalock v. Richardson*, the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock*, 483 F.2d at 776 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a de novo review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001)). Instead, the Court's role is limited to insuring that the ALJ followed applicable regulations and rulings in reaching his decision, and that the decision is supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VI. Discussion

As noted above, in Claimant's only challenge to the Commissioner's decision, she maintains that the ALJ did not properly consider the vocational expert's "somewhat tentative" answers to questions by Claimant's counsel regarding the vocational

adjustments that Claimant would be required to make in order to perform the sedentary level positions identified by the vocational expert. (ECF No. 9 at 6-9). A review of the testimony taken during the administrative hearing reveals that Claimant's argument is without merit.

During the hearing, the ALJ asked the vocational expert, Mary Harris, whether someone of Claimant's age and with Claimant's education, work experience, and RFC would have transferrable skills to a sedentary job that met all of her limitations. (Tr. at 47). Ms. Harris testified in the affirmative, stating that Claimant's training as an RN and her acquired work skills would transfer to other positions within the same Dictionary of Occupational Titles ("DOT") category as Claimant's past relevant work. (Tr. at 47-48). When asked what job skills would be transferrable, Ms. Harris testified:

> Well, there'd be the maintenance of record; record and report; monitoring and recording symptoms and changes in the patient's condition; treatment plans; developing and modifying treatment plans; consulting and coordinating with the health care team; some assessment in evaluation and instruction.

(Tr. at 48). Ms. Harris indicated that these skills would transfer to other registered nursing jobs; including, telephone triage nurse and certain case management nursing positions. (Tr. at 48). The ALJ asked Ms. Harris if the jobs that she identified were so similar that Claimant would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry. (Tr. at 48). Ms. Harris responded: "Yes. There would be very little adjustment." (*Id.*). The ALJ then inquired whether there would be any additional skills required in the proposed sedentary nursing positions that were not required in Claimant's previous job, and Ms. Harris responded: "No." (*Id.*). Ms. Harris confirmed that the proposed jobs would allow a sit/stand option and were in the same skill level of seven as Claimant's prior position. (Tr. at 49).

8

Claimant's attorney asked follow-up questions of Ms. Harris regarding the need for vocational adjustment when transitioning from a NICU nursing position to the proposed sedentary nursing positions. (Tr. at 50-53). Ms. Harris agreed that the case management positions she identified would probably require Claimant to learn a "new computer system" and "new software." (Tr. at 51). However, she added that the phone system, terms and definitions, and relevant codes probably would not change. (Tr. at 51-52). In addition, when asked if the position of triage nurse would require Claimant to learn new software, Ms. Harris responded that "[a] triage nurse is there to assist the, the medical team in defining the issues, getting the patient input, making decisions in terms of where it needs to go or what needs to happen. And that would all be the same regardless." (Tr. at 52). Counsel then initiated the following interchange which is the basis of Claimant's present challenge:

> Q. Okay. And would you agree that for someone who is over the age of 55 that perhaps needing to learn new software systems, new computer systems, new phone systems would be more than a simple adjustment to a new position?
>
> A. I hope not over that age. But, typically . . . I don't . . . it really depends on the person. You know, I, I . . . if, if I had a RN come to me, and I have had RN's [sic] many times unable to do their job, I would be looking at sedentary triage or home nurse positions . . .
>
> Q. All right.
>
> A. . . . and successfully placing them in those.

(Tr. at 53).

Claimant suggests that this testimony by Ms. Harris constituted an agreement that Claimant, an individual over the age of 55, would have trouble adjusting to the vocational changes required by the proposed sedentary positions. Therefore, the ALJ's conclusion that Claimant's skills would successfully transfer to the other jobs, requiring Claimant to

9

make little or no vocational adjustment, was not supported by substantial evidence. (ECF No. 9 at 6-9).

Having considered the testimony, the undersigned **FINDS** no error in the ALJ's assessment of the vocational expert's opinions. First, the passage of Ms. Harris's testimony emphasized by Claimant is not properly characterized as "tentative," nor is it a concession that Claimant would have more than a little difficulty learning new digital tools. When asked about a hypothetical individual with Claimant's vocational factors and RFC, Ms. Harris unequivocally testified that such an individual could perform the proposed sedentary nursing positions with little or no vocational adjustment. However, when counsel questioned Ms. Harris about the difficulties associated with learning new digital tools, counsel was not asking about a hypothetical individual with Claimant's background, training, and RFC. Instead, counsel asked Ms. Harris if "someone who is over the age of 55" might have to make more than a minor vocational adjustment when a new job required the person to learn different computer systems, software, and telephone systems. Given the broad and nonspecific nature of the question, Ms. Harris answered reasonably, noting that a person's age, alone, would not be the deciding factor; rather, it would depend upon the individual. In an effort to bring the questioning back to the case at hand, Ms. Harris added that, from her personal experience, registered nurses generally could make a successful transition. (Tr. at 53).

Clearly, this exchange does not alter Ms. Harris's opinions with respect to Claimant's ability to adjust to the proposed positions. "The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which the ***particular claimant*** can perform." *Walker v. Bowen,* 889 F.2d 47, 50 (4th Cir.1989) (emphasis added). Once the focus of counsel's questions

10

shifted from a hypothetical individual like Claimant to a generic person over 55 years of age, Ms. Harris's responses were no longer germane to the ALJ's disability determination. Indeed, the ALJ attempted to make a similar point when he interjected that counsel's questions were based upon a factual premise that was not corroborated by the evidence of record. (Tr. at 51-52).

Moreover, as the Commissioner argues, Ms. Harris clearly testified that only one of the positions she identified might require the use of different digital tools. Ms. Harris indicated that while case management positions would probably involve a different software/computer system, the position of telephone triage nurse would utilize the same skills and tools as Claimant's past position as a NICU nurse. (Tr. at 52). Ms. Harris further testified that upwards of 300,000 telephone triage nursing positons were available in the national economy. (Tr. at 49). As such, the Commissioner satisfied her step five burden to demonstrate the existence of a significant number of jobs that Claimant could perform. *Dimaggio v. Colvin*, No. 5:13-CV-296, 2015 WL 4392954, at *15 (D. Vt. July 15, 2015); *Rios v. Colvin*, No. 1:13-CV-1458, 2015 WL 1258908, at *14 (E.D. Va. Mar. 18, 2015) (holding that "[t]he fact that the vocational expert identified only one job is not by itself determinative of this issue. Many circuits including the Fourth Circuit have not clearly established the minimum number of jobs necessary to constitute a 'significant number' and some have found that a minimal number of jobs, including from one occupation, constitute a significant number at step five"); *Farnsworth v. Astrue,* 604 F.Supp.2d 828, 859 (N.D.W.Va. 2009) (explaining that the issue at step five is "whether there is at least one suitable occupation representing a significant number of jobs in the economy"). Thus, assuming that Claimant is only capable of performing the functions of a telephone triage nurse, there still exists a significant number of jobs available to her. *Id.* at 859 (finding

11

that 1,150 jobs regionally was significant); *Guiton v. Astrue*, No. 1:08CV822, 2012 WL 1267856, at *8 (M.D.N.C. Apr. 16, 2012) (collecting cases that found job numbers ranging from 174 to 1,300 to be significant). Notably, Claimant does not challenge the ALJ's RFC finding, hypothetical posed to the vocational expert, or any other aspect of the ALJ's decision. Therefore, as Claimant's only challenge to the Commissioner's decision is that the ALJ did not properly consider the vocational expert's testimony regarding the adjustment necessary to learn a new computer system and software, Claimant has not raised an issue that justifies remand.

The ALJ concluded, based on properly-elicited testimony from the vocational expert, that Claimant's acquired skills from her work as a NICU nurse were transferable to a position as a telephone triage nurse at the sedentary exertional level with very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry. The ALJ's assessment fully complies with 20 C.F.R. § 404.1568(d)(4); 20 C.F.R. § Pt. 404, Subpt. P, App. 2, § 201.00(f); and SSR 82-41. Therefore, the undersigned **FINDS** that the Commissioner's final decision of nondisability is supported by substantial evidence.

## VII. Recommendations for Disposition

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **DENY** Plaintiff's Motion for Judgment on the Pleadings, (ECF No. 9); **GRANT** Defendant's request to affirm the decision of the Commissioner, (ECF No. 10); and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is

12

hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:** October 26, 2016

_____
Cheryl A. Eifert
United States Magistrate Judge